Bernard ASHEIM, Appellant,

v.

PIGEON HOLE PARKING, INC., a Corporation; Vaughn Sanders, Leo Sanders, and Lawrence L. McLean, Appellees.

No. 16693.

United States Court of Appeals Ninth Circuit.

Oct. 3, 1960.

Don S. Willner, Lenon & Willner, Portland, Or., Howard Dent, Jr., Gardiner, Wash., for appellant.

Gordon E. Cornelius, Del Cary Smith, Spokane, Wash., for appellees.

Before POPE and HAMLIN, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

Appeal from a judgment of the United States District Court for the Eastern District of Washington, Northern Division, at Spokane, in an action by appellant against appellees for fraud and conspiracy based upon (1) allegedly untrue and fraudulent statements in a letter written to appellee Pigeon Hole Parking, Inc. (hereinafter Parking Co.) by its patent lawyer, Glen L. Fish, and by appellees furnished to appellant, relating to Parking Co.'s patent

" * * * on a structure of tiered storage stalls positioned at one or both sides of an elevator capable of being operated both horizontally and vertically; said elevator supporting a longitudinally shiftable vehicle lift carriage movable onto and off of the elevator by mechanical means. * * * "

and upon (2) the alleged fraudulent failure to pay a commission fee to appellant respecting parking installations furnished by appellee Parking Co. in a garage at 720 Third Avenue, New York City, which sale appellant alleges he "arranged for" but appellee executed, and upon (3) alleged fraud and conspiracy among appellees whereby the appellee Sanders for Parking Co. allegedly conspired to refuse to waive the contract right and duty of Construction Co. (a subsidiary of Parking Co., but not here joined as a party) to fabricate and install, and refused to permit other steel fabricators to substitute for Construction Co. in fabricating and installing, the elevator units to have been produced under the six-state patent franchise, thereby frustrating appellant's performance and realization of benefits under that franchise from Parking Co.

The foregoing reference to the three bases of appellant's action is an abridged statement of the allegations in his complaint of his four separate causes of action further mentioned in the next paragraph.

In his first count, appellant sues all four appellees for alleged fraudulent representations in the Fish letter as to the validity and scope of the patent. In his second and third counts, he sues only the appellee Parking Co. for breach of the six-state franchise contract with that appellee for the sale of the patented structural units. And in his fourth count, he sues in tort to recover much the same damage respecting the franchise contract as that involved in the third count.

Appellant is a citizen of the State of Oregon and the appellees are citizens of the State of Washington. There being diversity of citizenship of the parties, the District Court had jurisdiction under § 1332(a) (1) of Title 28 U.S.C., and this Court has jurisdiction under § 1291, id.

The law of the State of Washington applies to this case and requires that the one having the burden as appellant here had to prove fraud must do so by clear, cogent and convincing evidence. Dobbin v. Pacific Coast Coal Co., 25 Wash.2d 190, 202, 170 P.2d 642, 646. That law further requires, as stated in Webster v. L. Romano Engineering Corp., 178 Wash. 118, 120, 34 P.2d 428, 430, that the one alleging fraud so prove at least nine separate indispensable facts, namely:

"(1) representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage" (Citing).

Prior to the transactions complained of in this case, appellant had had other dealings with appellees and had obtained from them and held the franchise for this same structural device for Portland, Oregon, and he knew that the Fish letter contained not only that part quoted above, but also the following:

"We anticipate securing further protection for you on various portions of the structure when the pending applications issue into patents. However, it is useless to ponder the degree of protection which may be derived until the prosecution has progressed further."

Appellant knew in the early days of October, 1952, and before he paid to Parking Co. his initial $10,000 on account of the six-state franchise, that the patent claims purporting to

" * * * cover a structure of tiered storage stalls * * * "

had been questioned, particularly when Mr. Kuhn, a key man in an important matter discussed by appellant in New York City, told him of Mr. Kuhn's opinion that

"As far as having broad protection on an entire parking facility, I question it very seriously on this late date in the art if such a thing is possible."

From the foregoing in the light of all the evidence, it must be concluded that an ordinary businessman could not and that appellant could and did not reasonably or rightly rely unconditionally upon any material statement in the Fish letter, and that appellant must have realized and accepted that letter for what it was, —the writer's honest opinion as to the allowable patent claims stated as they were with specific conditions.

The Trial Court upon ample supporting evidence found

" * * * that none of the defendants (appellees) at the times alleged, or at any other time, made any false or fraudulent statement to Asheim concerning the patent application, the scope of the claims allowed, or of any material matter affecting the patent application, its claims, or the patent protection." (Parentheses and contents supplied.)

Appellant's second cause of action for a selling agent's commission is based on an alleged implied contract, not upon an express contract providing for his commission. He did not then have a franchise for New York City and he did not allege any other express contract creating a selling agency or fixing compensation for his making sales. The Trial Court found that, although appellant discussed with important New York business interests his proposed sales program for Parking Co.'s patented parking units and discussed with one leading New York real estate concern a proposed specific contract for installing in that concern's 720 Third Avenue garage a suitable number of the Parking Co.'s patented parking units, that proposed deal never got beyond the discussion point. It did appear that the Construction Co. (subsidiary of appellee Parking Co.) made a contract August 3, 1953, with a subsidiary corporation of the above mentioned real estate concern, but that contract was expressly made contingent upon approval of the building plans by New York City. The building plans never were approved by that City, and the Parking Co.'s patented parking installation never was erected at that 720 Third Avenue address. No contract express or implied for any kind of services or commission payment was ever made.

The Trial Court's ruling against appellant's recovery on his second cause of action was correct.

As to the third and fourth causes of action, much of the pertinent evidence is common to both, and we now consider them together. In its opinion and decision upon those causes of action, the Trial Court narrated the terms of the six-state franchise agreement as approved by appellant and appellee Parking Co., and detailed the evidence to the effect that it was agreed that appellant's $10,000 initial payment should be applied on the mutually agreed franchise payments

to be in most part paid in specified future successive installments but that initial payment was in all events to be and remain the property of Parking Co., and respecting his performance to the effect that appellant did not sell or cause to be sold any patented units in the franchise states nor when due or at any time pay any part of those future installments, and to the effect that pursuant to the franchise agreement rights of Parking Co. and its subsidiary Construction Co., Parking Co. refused appellant's request for modification of that part of the agreement giving Construction Co. the right to furnish the fabricating steel for the patented units appellant wished to sell a prospective buyer in one of his franchise states so that an affiliate of the buyer could be substituted for Construction Co. as the steel fabricator for units to be sold that buyer, and that that action occurred at a conference of appellant, the prospective buyer's agents and the individual appellees acting as corporate officials for Parking Co., that such refusal was authorized by the franchise agreement, and to the effect that finally appellee Parking Co. gave notice to appellant of the termination of his six-state franchise.

■ The Court also ruled that under Washington law (Cheesman v. Sathre, 45 Wash.2d 193, 273 P.2d 500) appellant had the burden of proving his alleged fraudulent conspiracy on the part of appellees by clear, cogent and convincing evidence, and that that burden had not been met by appellant, and further that appellant's allegations of fraud in any of his causes of action had not been established as in effect indicated by the facts that he was unable to procure the necessary financing by his New York contacts in connection with his efforts to obtain and promote a franchise covering that sales territory and to sell patented parking units there, and also in effect that in that New York experience and in the above instance of appellant's attempting such sales in his six-state franchise territory, his prospective buyers made their own searches in the Patent Office independent of any other information made available to them by appellant or Parking Co. respecting the scope or validity of Parking Co.'s patent.

■ The Trial Court found and decided that Parking Co. was within its rights in setting the terms of the tendered franchises, and that by the terms of the six-state franchise appellant is bound, that prospective buyers made no complaint of fraudulent statements in Parking Co.'s printed sales material, and did not assign any misrepresentation in that material as a reason for not buying the patented units, and that there is no substantial evidence of any damage sustained by appellant on account of anything done or not done by appellees which they did not have the right to do or refuse to do, and that the evidence does not support any finding or inference that the three individual appellees wrongfully interfered with appellant's performance of his six-state franchise, or conspired or attempted so to do.

That Court dismissed the third and fourth causes of action, and awarded judgment on the merits to appellees. Appellant's other assignments of error have been considered. We believe they are without merit. Judge Ryan's opinion for the Trial Court, reported in D.C., 175 F. Supp. 320, sets forth the facts fully and in great detail and ably discusses the law involved. We are in full accord with that opinion.

We are convinced that the Trial Court's rulings and action here appealed are overwhelmingly supported by the evidence and they are in all respects affirmed.