# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

FENTAHUN AMARE,

          Appellant,

          v.

MOHAMUD SHARAWE AND JANE
DOE SHARAWE, individually and their
Marital community, and WASHINGTON
ACCESSIBLE TRANSPORTATION,
LLC, (d/b/a W.A.T.), a WASHINGTON,
corporation,

          Respondents.

No. 73515-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 1, 2016

SPEARMAN, J. — Appellant Fentahun Amare appeals pro se from a summary judgment order dismissing his claims against respondents Mohamud Shaware and Washington Accessible Transportation, LLC. Because Amare fails to demonstrate a genuine issue of material fact, we affirm.

## FACTS

Appellant Fentahun Amare, acting pro se, brought claims against respondents Mohamud Shaware and Washington Accessible Transportation, LLC, for violation of ch. 25.05 RCW, the Revised Uniform Partnership Act (UPA), unjust enrichment, breach of contract, fraud, misrepresentation, and negligent misrepresentation. From the record on appeal, we discern the following facts.

On July 3, 2006, appellant Fentahun Amare, Camel M. Sellam, and Respondent Omar A. Hussein established a company named Washington

Accessible Taxis, LLC (Taxi). The company served to provide wheelchair accessible taxi transportation services.

Taxi hired Mohamed Mohamud as an employee, during which time he worked as a contract manager but not as a member of Taxi. On April 23, 2010, Mohamud established his own company known as Washington Accessible Transportation LLC (Transportation).[1]

Taxi had a contract to provide services to King County (County) and the City of Seattle (City) through a pilot project that ran from 2006 to 2010. After the completion of the pilot program in 2010, the County sent out a request for proposals for other companies to submit bids to provide wheelchair accessible taxi services.

On June 30, 2010, one of Taxi's members, Amin Bounani, dissolved Taxi. It did not apply for the contract. Another former member of Taxi, Hussein submitted a proposal under his similarly named company, Washington Accessible Taxi Associates, LLC, (Associates). According to Amare, Hussein offered him a share in the new company, but later told him that he had given Amare's share to respondent Mohamud W. Shaware. The record contains a declaration signed by two individual members of Associates, explaining that they invited Shaware to replace Amare as a member of Associates and that he agreed to "be a co-owner of yellow cab #543" with Amare if Associates won the

---

[1] All of the companies mentioned used the acronym, "WAT," to refer to themselves. Br. of Appellant at 6-7. King County also used the acronym, abbreviating "Wheelchair-Accessible Taxicab" to refer its taxicab licenses. Clerk's Papers (CP) at 163-67.

contract.[2] Clerk's Papers at 149-150. Shaware further agreed to purchase the vehicle and bear all related expenses. Amare was "required" to pay for the computer, camera, dispatch radio and a taxi meter.[3] Id. According to the declaration, Associates was awarded the contracts with the City and County in April 2011. Id. The declaration states that Shaware claimed the license for himself and pocketed the proceeds from the cab. Id.

Shaware received a license to provide wheelchair taxi services to King County in March of 2011. He purchased a vehicle and equipment and had been operating the taxi service for over two years when Amare filed this action against him and Transportation. The trial court granted both defendants' motions for summary judgment. Amare's motion to vacate the order dismissing his claims and for reconsideration was denied. He appeals.

## DISCUSSION

Amare assigns error to the trial court's failures to declare unlawful and illegal actions taken by Shaware and by Amare's former associates.[4] As to

---

[2] The declaration was signed by Elias Shifow and Omar A. Hussein. A space for a signature by Tadesse Asefa also appeared without a signature. We note that Hussein later recanted the declaration indicating that he signed it under pressure from Amare.

[3] We note that Amare nowhere alleges that he fulfilled his purported obligations under the alleged agreement.

[4] Four of Amare's five assignments of error pertain to the trial court's "fail[ure] to rule" that the actions of Amin Bouanani, Mohamed Mohamud, Omar Hussein, and Christopher Van Dyk, were illegal and unlawful. But Amare did not bring claims against these persons; none of them are named as parties to this lawsuit, nor is there evidence in the record that they were ever added or served with a summons and complaint. Proper service of a summons and complaint is essential to invoke personal jurisdiction over a party. Allstate Ins. Co. v. Khani, 75 Wn. App. 317, 324, 877 P.2d 724 (1994). Accordingly we do not consider these claims of error. In addition, because Amare fails to assign error or make any argument regarding the trial court's dismissal of his claims against Transportation, we do not consider his appeal of that order.

Shaware, he specifically claims the "court erred by failing to rule that ... Shaware, ... falsified declaration and testimony under oath that he obtained license directly from the City and County[.]" Br. of Appellant at 4. He does not specifically assign error to the trial court order granting summary judgment dismissing his claims for violation of the Uniform Partnership Act, unjust enrichment, breach of contract, fraud, misrepresentation and negligent misrepresentation. Nor does he indicate with any specificity that disputed issues of material fact exist as to each element of his various claims. Nonetheless, for purposes of this appeal, we presume the assignment of error challenges the trial court's order granting Shaware's motion for summary judgment.

We review summary judgment orders de novo. Lunsford v. Saberhagen Holdings, Inc., 166 Wn.2d 264, 270, 208 P.3d 1092 (2009). We consider facts and reasonable inferences in the light most favorable to the nonmoving party. McNabb v. Dep't of Corrs., 163 Wn.2d 393, 397, 180 P.3d 1257 (2008). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

Once the moving party meets its initial burden to show that there is no genuine issue as to any material fact, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclosing that a genuine issue as to a material fact exists. Seven Gables Corp. v. MGM/UA Entm't Co., 106

Wn.2d 1, 13, 721 P.2d 1 (1986). Statements of ultimate facts, conclusions of fact, or conclusory statements of fact are insufficient to overcome a summary judgment motion. Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359–60, 753 P.2d 517 (1988).

To the extent Amare assigns error to the trial court's failure to find that Sharawe committed fraud and fraudulent and/or negligent misrepresentation when he represented that he obtained his taxi license "directly from the City and County," the claim is without merit.[5] Brief of Appellant at 4. Amare does not explain how Sharawe intended him to rely on this alleged misrepresentation, or how he, in fact, did so. Thus, he cannot show that there exists a material issue of fact sufficient to defeat summary judgment on these claims. In addition, the

---

[5]The elements of fraud include: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted on by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance upon the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. Stiley v. Block, 130 Wn.2d 486, 505, 925 P.2d 194 (1996) (citing Hoffer v. State, 110 Wn.2d 415, 425, 755 P.2d 781 adhered to on reconsideration (1989).

To establish fraudulent misrepresentation, a plaintiff must prove nine elements (1) a representation of an existing fact; (2) the materiality of the representation; (3) the falsity of the representation; (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) the speaker's intent that the listener rely on the false representation; (6) the listener's ignorance of its falsity, (7) the listener's reliance on the false representation, (8) the listener's right to rely on the representation, and (9) damage from reliance on the false representation. Baertschi v. Jordan, 68 Wn.2d 478, 482, 413 P.2d 657 (1966) (citing Swanson v. Solomon, 50 Wn.2d 825, 314 P.2d 655 (1957)).

A plaintiff claiming negligent misrepresentation must prove by clear, cogent, and convincing evidence that (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6), the false information proximately caused the plaintiff damages. Lawyers Title Ins. Corp. v. Baik, 147 Wn.2d 536, 545, 55 P.3d 619 (2002) (citing ESCA Corp. v. KPMG Peat Marwick, 135 Wn.2d 820, 826, 959 P.2d 651 (1998)).

record before us is devoid of evidence that Shaware made any representations at all directly to Amare, let alone one that was knowingly false, material, and made with the intent to have Amare rely upon it to his detriment. Sharawe's declaration asserts that prior to commencement of this litigation he had no interaction at all with Amare. CP at 77-78. Amare does not dispute this as he conceded in response to interrogatories that he has "not communicated directly in writing or orally with Defendant Mohamud Sharawe." CP at 76.

Similarly, Amare has failed to establish an issue of fact as to the elements of a claim against Sharawe for violation of the UPA, breach of contract, or unjust enrichment.[6] Even viewing the evidence in the light most favorable to Amare, at most, it shows only an agreement between Sharawe and Associates but not between Shaware and Amare. Nor is there evidence that either Shaware or Amare engaged in any conduct indicating that they intended to carry on as co-owners. Thus, the trial court properly dismissed Amare's contract and UPA

---

[6] To establish a partnership Amare bears the burden of proving that he and Shaware "carr[ied] on as co-owners a business for profit[.]" RCW 25.05.055(1). "Whether evidenced by an express agreement between the parties or implied from the surrounding circumstances, '(t)he existence of a partnership depends upon the intention of the parties.'" Kintz v. Read, 28 Wn. App. 731, 734, 626 P.2d 52 (1981) (quoting In re Estate of Thornton, 81 Wn.2d 72, 79, 499 P.2d 864 (1992)). To establish a breach of contract claim, Amare must first establish its existence. Bogle and Gates, P.L.L.C. v. Zapel, 121 Wn. App. 444, 90 P.3d 703 (2004). The essential elements of a contract are "the subject matter of the contract, the parties, the promise, the terms and conditions, and (in some but not all jurisdictions) the price or consideration." Id. at 448-49 (quoting Holly Mountain Resources v. Bogle and Gates, P.L.L.C., 108 Wn. App. 557, 560, 32 P.3d 1002 (2001)). To establish an unjust enrichment claim, Amare must show "[a] benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 160, 810 P.2d 12 (1991) (citing Everhart v. Miles, 47 Md. App. 131, 136, 422 A.2d 28 (1980).

claims. And because there is no evidence that Amare conferred any benefit on Shaware, his unjust enrichment claim also fails. We conclude the trial court did not err in granting summary judgment to Transportation and Shaware.

Affirmed.

WE CONCUR: